BLAINE EQUIPMENT COMPANY, INC., Appellant, *v.* THE STATE OF NEVADA; NEVADA STATE PURCHASING DIVISION; AND STATE OF NEVADA DEPARTMENT OF TRANSPORTATION, Respondents.

No. 44648

July 27, 2006          138 P.3d 820

---

*Callister & Reynolds* and *Matthew Q. Callister*, Las Vegas, for Appellant.

*George Chanos*, Attorney General, *Sonia E. Taggart*, Senior Deputy Attorney General, and *George G. Campbell*, Deputy Attorney General, Carson City, for Respondent State Purchasing Division.

*George Chanos*, Attorney General, and *Teresa J. Thienhaus*, Deputy Attorney General, Carson City, for Respondent Department of Transportation.

Before ROSE, C. J., GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider (1) whether the district court had an obligation to join, sua sponte, Cashman Equipment as a necessary party under NRCP 19(a); and (2) whether a district court has the equitable power to reach a conclusion contrary to the mandatory language of NRS 333.810(1).

We conclude that the district court was required, sua sponte, to join Cashman as a necessary party under NRCP 19(a). Further, we conclude that the district court does not have the equitable power to reach a conclusion contrary to the mandatory language of NRS 333.810(1).

### FACTS AND PROCEDURAL HISTORY

When state agencies like the Nevada Department of Transportation (NDOT) wish to purchase equipment for state projects, they must abide by the State Purchasing Act codified in NRS Chapter 333. NRS Chapter 333 details the procedures and regulations that the Purchasing Division must follow during the bidding process and the subsequent award of contracts to vendors.

Under NRS 333.135, the Chief of the Purchasing Division must "adopt regulations establishing procedures for awarding contracts pursuant to [Chapter 333]."[1] One such regulation is contained in Nevada Administrative Code 333.050, stating that "[i]n addition to the methods of obtaining a contract set forth in NRS 333.162, the Chief may use [purchase] price agreements," or PPAs.

Even though the Chief has the power to adopt regulations and establish procedures for awarding contracts, this power is limited by NRS 333.340. NRS 333.340 requires the Chief to award every purchasing contract to the "lowest responsible bidder," which is determined by the consideration of certain factors contained in NRS 333.340(1)(a) and (b). The use of PPAs, however, relaxes the restrictions of NRS 333.340 by allowing the Chief to award contracts to multiple bidders instead of the single lowest responsible

---

[1]*See also* NRS 333.162(1)(d) ("The Chief may designate the method of obtaining a contract, including: . . . [a]ny other accepted method of purchasing that complies with the provisions of this chapter.").

bidder. Here, NDOT requested, through PPA 6757, that the Purchasing Division invite bids from suppliers for the purchase of articulated motor graders.[2] After receiving the request, the Purchasing Division issued an invitation to bid on the contract. Several bidders, including appellant Blaine Equipment Company, Inc., submitted bids. The Purchasing Division accepted multiple bids, including Blaine's, as responsive to PPA 6757.

After reviewing the bids, NDOT requested that the Purchasing Division purchase seven of the necessary motor graders from Cashman because NDOT found Cashman to be ''the lowest responsible bidder based upon the factors set forth in NRS 333.340(1).'' The Purchasing Division agreed with NDOT's assessment and processed NDOT's request. The Purchasing Division also purchased a motor grader from Blaine. A short time after this purchase, the Purchasing Division purchased additional motor graders from Cashman. In response, Blaine filed a complaint with the district court. Blaine named the Purchasing Division and NDOT as defendants. Blaine, however, did not name Cashman, with whom the Purchasing Division had contracted to provide motor graders, as a defendant.

Blaine sought three forms of relief from the district court. First, Blaine sought declaratory relief arguing that the PPAs violated NRS Chapter 333, which governs state purchasing. Second, Blaine sought to void each motor grader contract that violated NRS Chapter 333, even if the contract had already been performed. Third, Blaine sought temporary and permanent injunctions to prevent the Purchasing Division from entering into contracts that violated NRS Chapter 333 and from purchasing motor graders from a party that was not the lowest bidder. The district court deferred ruling on Blaine's action for declaratory relief until additional discovery could be conducted and denied Blaine's application for injunctive relief.

About a month after the district court denied injunctive relief, Blaine filed a motion for summary judgment, alleging that the Purchasing Division's use of PPAs to effect the purchases of the graders violated NRS Chapter 333. In partially granting the motion, the district court agreed that the use of PPAs violated NRS Chapter 333,[3] but declined to rule on whether the contracts that

[2]An articulated motor grader is a large construction-style truck used for, among other things, building and maintaining roads.

[3]The district court found that PPA 6757 violated NRS Chapter 333 for the following reasons: (1) there was no clear procedure for determining which bidder was the lowest bidder for each piece of equipment ordered; (2) the lowest bidder was not identified for each purchase; (3) the lowest bidder did not receive notice as to why its bid was not accepted; and (4) due to lack of notice, unsuccessful bidders' rights to appeal were not triggered.

had already been performed between Cashman and the Purchasing Division were void under NRS 333.810(1).[4] Instead, the district court continued the hearing to allow for supplemental briefing on that issue.

After further briefing by the parties, the court determined that it would not void the contracts already performed between Cashman and the Purchasing Division, reasoning that it could not void contracts for which the essential elements had been completely performed. The district court stated that ''[b]ecause the equipment has already been used, there is no way to put the parties to the contract in the same position as if the contract had never been entered.'' Thus, the district court concluded that even though the contracts violated NRS Chapter 333, equity demanded that they be affirmed.

After the district court partially granted and partially denied Blaine's motion for summary judgment, Blaine filed a ''Motion for Summary Judgment on Attorney's Fees as Damages.'' Because the district court did not find any evidence of bad faith by the Purchasing Division or NDOT, it denied Blaine's motion for attorney fees.

Blaine now appeals. Blaine first challenges the district court's decision to affirm the contracts between Cashman and the Purchasing Division that had already been performed.[5] Second, Blaine challenges the district court's order denying its motion for attorney fees.

## DISCUSSION

While neither party has raised this issue on appeal, we must necessarily determine whether the district court had an obligation to sua sponte join Cashman as a party.[6] This court has previously determined that a district court is obligated to, sua sponte, join a necessary party under NRCP 19(a) if the litigants have not joined that party[7] and the failure of a litigant to join a necessary party

---

[4]NRS 333.810(1) states that any purchasing contract entered into in contravention of NRS Chapter 333 shall be void.

[5]The district court voided the contracts between the parties that had yet to be performed.

[6]*Johnson v. Johnson*, 93 Nev. 655, 656, 572 P.2d 925, 926 (1977) (''The failure to join an indispensible [sic] party may be raised by the appellate court *sua sponte* . . . .''). *Johnson* describes the party as indispensable under NRCP 19(a). This description is incorrect as NRCP 19(a) defines such parties as indispensable only when joinder of that party is not feasible under NRCP 19(a)(2). Nevertheless, the failure to join a necessary party may be raised by the appellate court sua sponte.

[7]*See University of Nevada v. Tarkanian*, 95 Nev. 389, 396, 594 P.2d 1159, 1163 (1979) (stating that ''[a]s is shown by the mandatory language of Rule 19(a), the enforcement of the rule is not left to the parties themselves'').

does not constitute a waiver.[8] We now extend both conclusions to actions involving NRS Chapter 333 state purchase challenges.

Under NRCP 19(a), "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined" if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Whether joinder under NRCP 19(a) applies to an NRS Chapter 333 proceeding is an issue that has not previously come before this court. Federal courts, however, have addressed the application of Federal Rule of Civil Procedure 19(a)—a rule almost identical to NRCP 19(a)—in factually similar cases. "We have previously recognized that federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules."[9]

The United States Court of Appeals for the District of Columbia stated that "[i]t is settled that '[r]escission of a contract, or declaration of its invalidity, as to some of the parties, but not as to others, is not generally permitted.' "[10] Moreover, the court stated that " '[t]here is a general rule that where rights sued upon arise from a contract all parties to it must be joined.' "[11]

With these principles in mind, we conclude that Cashman is a necessary party to the district court proceedings under NRCP 19(a)(1) because complete relief could not be accorded to the Purchasing Division in Cashman's absence. If the district court were to find the contracts void under NRS 333.810(1), the Purchasing Division would have to request rescission of the contracts and attempt to return the motor graders to Cashman in exchange for reimbursement of purchase prices already tendered. Cashman, as a nonparty to the district court proceedings, could refuse such a re-

---

[8]*Id.* (stating that "the trial court or appellate court may raise the issue [of joinder under NRCP 19(a)] *sua sponte*"); *see also* NRCP 19(a) ("If the [necessary party] has not been so joined, the court shall order that the person be made a party.").

[9]*Nelson v. Heer*, 121 Nev. 832, 834, 122 P.3d 1252, 1253 (2005).

[10]*Ward v. Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953) (quoting *Roos v. Texas Co.*, 23 F.2d 171, 172 (2d Cir. 1927)).

[11]*Id.* (quoting *Gauss v. Kirk*, 198 F.2d 83, 84 (D.C. Cir. 1952)).

quest. If Cashman refused the request, the Purchasing Division would be required to commence litigation against Cashman in order to comply with the district court's order. That litigation may not yield the same outcome as the original proceeding. In short, a district court order voiding the contracts would not provide complete relief to the Purchasing Division if Cashman were not made a party. Therefore, Cashman was a necessary party under NRCP 19(a), and even though the parties did not raise the issue, the district court erred by not sua sponte joining Cashman in the district court proceedings.[12] Accordingly, we remand the case to the district court with instructions to conduct proceedings with Cashman as a party.

*The district court does not have the equitable power to affirm contracts that violate NRS Chapter 333*

On remand, the district court may not rely on its equitable power to disregard the mandatory language of NRS 333.810(1). If the district court finds that the contracts violate NRS Chapter 333, the mandatory language of NRS 333.810(1) controls.

Statutory interpretation is a question of law that this court reviews de novo.[13] "When the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it."[14] A statute is ambiguous if it "is capable of being understood in two or more senses by reasonably well-informed persons."[15]

NRS 333.810(1), the statute at issue, states, in pertinent part, that "[a]ny purchase and any contract for the purchase of any supplies, materials or equipment, made or entered into by any state officer, department, institution, board, commission or agency contrary to the provisions of this chapter and the rules and regulations of the Chief promulgated pursuant thereto, *shall be void.*" (Emphasis added.)

The language of NRS 333.810(1) is plain and unambiguous. Specifically, a reasonably well-informed person could understand the language to stand for the single proposition that any purchase and any contract for the purchase of equipment by any state offi-

---

[12]Because Cashman is a necessary party under NRCP 19(a)(1), we need not reach whether it is a necessary party under any other provision of NRCP 19(a).

[13]*Birth Mother v. Adoptive Parents*, 118 Nev. 972, 974, 59 P.3d 1233, 1235 (2002).

[14]*City Council of Reno v. Reno Newspapers*, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

[15]*Thompson v. District Court*, 100 Nev. 352, 354, 683 P.2d 17, 19 (1984).

cer shall be void if the contract violates NRS Chapter 333. Consequently, this court must give the scope of the statute and the statute's remedy their ordinary meanings.

The scope of NRS 333.810(1) covers contracts that have been performed and contracts that are yet to be performed. First, the statute covers "any purchase" of equipment and second, "any contract for the purchase of" equipment. The express use of both phrases demonstrates that the Legislature intended NRS 333.810(1) to cover contracts that have been performed (*i.e.*, "any purchase" of equipment) and contracts that have yet to be performed (*i.e.*, "any contract for the purchase of" equipment). The fact that the Legislature proscribed two contractual situations underscores its intent to void any contract that violates NRS Chapter 333 regardless of whether performance has been completed.

The remedy under NRS 333.810(1) is clearly stated as well. NRS 333.810(1) states that "[a]ny purchase and any contract for the purchase of . . . equipment . . . contrary to the provisions of this chapter and the rules and regulations of the Chief promulgated pursuant thereto, shall be void." This court has previously stated that "[t]he word 'shall' is a term of command; it is imperative or mandatory, not permissive or directory."[16] Therefore, any purchase and any contract for the purchase of equipment entered into in violation of NRS Chapter 333, regardless of whether performance is complete, is void.[17]

This court has, in the past, affirmed the district court's use of equitable power to grant relief contrary to that mandated by the language of a statute.[18] Those cases, however, involve an interpre-

---

[16]*Adkins v. Oppio*, 105 Nev. 34, 37, 769 P.2d 62, 64 (1989).

[17]*See also Martin v. City of Corning*, 101 Cal. Rptr. 678, 680 (Ct. App. 1972) (stating that noncompliance with a statute for a public contract renders the contract void); *Saint Barnabas Medical Center v. Essex County*, 543 A.2d 34, 39 (N.J. 1988) (stating that "the law presumes that public contractors operate with knowledge of relevant laws . . . and where applicable provisions are not followed, any agreements entered into are unenforceable, absent lawful ratification" (citations omitted)); *N.Y. St. Ass'n of Plumb.-Heat.-Cool. v. Egan*, 477 N.Y.S.2d 737, 739 (App. Div. 1984) (stating that " '[a] contractor who has performed work pursuant to a noncomplying contract may be denied recovery, either under its agreement or on the basis of *quantum meruit*, even when the unit of government has received the benefit of performance' " (quoting *N.Y. State Ass'n of Plumbing, Etc. v. Egan*, 449 N.Y.S.2d 86, 88 (App. Div. 1982) (alteration in original))).

[18]*See Donoghue v. T.O.M. Co.*, 45 Nev. 110, 116, 198 P. 553, 554 (1921) (stating that "[the issue] is not a question of construction of the proviso, but one of interpretation as to whether or not Congress intended that its terms should be so inflexible as not to permit of exceptions"); *see also State Engineer v. American Nat'l Ins. Co.*, 88 Nev. 424, 426, 498 P.2d 1329, 1330

tation of the intent behind a joint resolution passed by the United States Congress during World War I[19] and the unique area of state water law.[20] The Purchasing Division has not provided, and we have not found, a compelling argument supporting an extension of the district court's equitable power beyond the unique factual circumstances of those cases.

## CONCLUSION

We conclude that the district court erred by not sua sponte joining Cashman as a party to the district court proceedings under NRCP 19(a). Further, we conclude that the district court does not have the equitable power to affirm the contracts which contravene the mandatory language of NRS 333.810(1) declaring them void. Consequently, we reverse the district court's order affirming the contracts between Cashman and the Purchasing Division and remand the matter to the district court with instructions to join Cashman and conduct further proceedings consistent with this opinion. Because further proceedings are necessary, we vacate the order denying Blaine's request for attorney fees as damages.[21]

ROSE, C. J., and GIBBONS, J., concur.

---

(1972) (stating that a statute requiring the State Engineer to cancel water permits when the permittee fails to file proof of an application of water to beneficial use "does not, however, affect the power of the district court to grant equitable relief to the permittee when warranted").

[19]*Donoghue*, 45 Nev. at 116, 198 P. at 554.

[20]*American Nat'l Ins. Co.*, 88 Nev. at 426, 498 P.2d at 1330; *Bailey v. State of Nevada*, 95 Nev. 378, 381-82, 594 P.2d 734, 736 (1979); *Engelmann v. Westergard*, 98 Nev. 348, 351-52, 647 P.2d 385, 387-88 (1982).

[21]Because we are remanding the case to the district court for proceedings consistent with this opinion, we need not address the merits of Blaine's claim that it is entitled to attorney fees as damages. We have considered the remaining issues raised by the parties and conclude they are without merit.